UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| JORDAN ROSENBLATT, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>CHARDAN HEALTHCARE ACQUISITION CORP., GBOLA AMUSA, JONAS GROSSMAN, GEORGE KAUFMAN, MICHAEL RICE, RICHARD GIROUX, MATTHEW ROSSEN, and ERIC KUSSELUK,<br><br>　　　　　Defendants. | Case No. _____<br><br>JURY TRIAL DEMANDED<br><br><u>CLASS ACTION</u> |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1.　On July 16, 2019, Chardan Healthcare Acquisition Corp.'s ("Chardan") Board of Directors (the "Board" or "Individual Defendants") caused Chardan to enter into an agreement and plan of merger (the "Merger Agreement") with BiomX Ltd., ("BiomX"), Shareholder Representative Services LLC (the "Shareholder Representative"), and CHAC Merger Sub Ltd. ("Merger Sub").

2.　Pursuant to the terms of the Merger Agreement, BiomX's securityholders will receive an aggregate of 16,625,000 Chardan shares. As a result of the Proposed Transaction, Chardan's public stockholders will only own approximately 20% of Chardan's stock.

3. On September 13, 2019, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC"), which recommends that Chardan's stockholders vote to approve the Proposed Transaction at a special meeting of stockholders scheduled for October 23, 2019.

4. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Chardan common stock.

9. Defendant Chardan is a Delaware corporation and maintains its principal executive offices at 17 State Street, 21st Floor, New York, New York 10004. Chardan's common stock is

traded on the New York Stock Exchange American under the ticker symbol "CHAC."

10. Defendant Gbola Amusa is Executive Chairman of the Board of Chardan.

11. Defendant Jonas Grossman is President, Chief Executive Officer, and a director of Chardan.

12. Defendant George Kaufman is Chief Financial Officer and a director of Chardan.

13. Defendant Michael Rice is a director of Chardan.

14. Defendant Richard Giroux is a director of Chardan.

15. Defendant Matthew Rossen is a director of Chardan.

16. Defendant Eric Kusseluk is a director of Chardan.

17. The defendants identified in paragraphs 10 through 16 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

18. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Chardan (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

19. This action is properly maintainable as a class action.

20. The Class is so numerous that joinder of all members is impracticable. As of July 16, 2019, there were approximately 10,062,500 shares of Chardan common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

21. Questions of law and fact are common to the Class, including, among others, whether defendants violated the Exchange Act and whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

22. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

23. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

24. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Purchaser and the Proposed Transaction*

25. Chardan is a special purpose acquisition company formed for the purpose of effecting a merger, acquisition, or similar business combination. Chardan was founded and sponsored by affiliates of Chardan Capital Markets LLC.

26. On July 16, 2019, the Individual Defendants caused Chardan to enter into the Merger Agreement with BiomX, the Shareholder Representative, and Merger Sub.

27. Pursuant to the terms of the Merger Agreement, BiomX's securityholders will receive an aggregate of 16,625,000 Chardan shares.

28. As a result of the Proposed Transaction, Chardan's public stockholders will only own approximately 20% of Chardan's stock.

29. On the other hand, BiomX shareholders will own approximately 73% of Chardan's stock, and Chardan's Initial Public Offering sponsor (the "Sponsor") will own approximately 7% of Chardan's stock.

30. According to the press release announcing the Proposed Transaction:

Chardan Healthcare Acquisition Corp. (NYSE: CHAC, "CHAC"), a special purpose acquisition company ("SPAC") sponsored by affiliates of Chardan Capital Markets LLC ("Chardan"), announced today that it has entered into a definitive agreement for a business combination with BiomX Ltd. ("BiomX"), a microbiome company developing both natural and engineered phage therapies.

Assuming no redemption of CHAC shareholders, the combined company will have an initial market capitalization of approximately $254 million. Upon closing of the transaction, it is expected that CHAC will be renamed BiomX and remain on the NYSE American Stock Exchange, listed under a new ticker symbol.

CHAC has entered into a mix of commitments including purchase and sale, backstop, and voting agreements with BiomX and with investors – including OrbiMed, RTW Investment, Johnson & Johnson Innovation - JJDC, Inc. (JJDC), Takeda Ventures, Inc., Seventure Partners' Health for Life Capital I, SBI Japan-Israel Innovation Fund, as well as RM Global Partners (RMGP) BioPharma Investment Fund – so that the $50 million minimum closing condition for the transaction has been satisfied prior to today's announcement.

Proceeds from the transaction will provide BiomX with substantial growth capital and the flexibility of a public listing to further accelerate BiomX's expansion as a leading microbiome product discovery company. BiomX is developing customized phage-based products designed to improve the appearance of acne-prone skin and eradicate harmful bacteria in chronic diseases. The company's pipeline includes preclinical candidates for acne-prone skin, inflammatory bowel disease (IBD), primary sclerosing cholangitis (PSC), and colorectal cancer (CRC). BiomX's product for acne-prone skin is anticipated to begin clinical testing by the end of 2019. The combined company will continue to be led by BiomX's experienced management team headed by Chief Executive Officer Jonathan Solomon. . . .

Summary of Transaction

CHAC raised $70 million in its IPO which is now held in a trust account. Under the terms of the proposed transaction announced today, CHAC will issue 16.625

million shares and vested securities to current securityholders of BiomX. Certain BiomX shareholders may, subject to the terms of the investment agreements, receive up to an additional 6.0 million CHAC shares: 2.0 million shares if the share price exceeds $16.50 by fiscal year 2021, an additional 2.0 million shares if the share price exceeds $22.75 by fiscal year 2023, and an additional 2.0 million shares if the share price exceeds $29.00 by fiscal year 2025.

After giving effect to the investor transactions being undertaken in order to meet the minimum cash condition, and assuming no redemption from CHAC shareholders, it is estimated that the current securityholders of BiomX will own approximately 73% of the issued and outstanding vested securities in the combined company at closing.

Post-closing, Mr. Solomon and three current BiomX directors will join Mr. Grossman and Dr. Amusa from CHAC on the seven-person board of directors. An additional board member will be designated by BiomX.

***The Proxy Statement Omits Material Information***

31. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction, which seeks stockholder approval of the Proposed Transaction.

32. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction.

33. The Proxy Statement fails to disclose the terms of the nondisclosure agreement executed by Chardan and Candidate Four.

34. Similarly, the Proxy Statement fails to disclose the terms of the nondisclosure agreement executed by Chardan and BiomX.

35. The Proxy Statement fails to disclose the reasons that, "as discussions with BiomX advanced, the frequency of interaction with Candidate Four decreased and no further interaction regarding the proposal took place."

36. The Proxy Statement fails to disclose whether Candidate Eight responded to the "initial presentation containing an overview of SPACs and background on CHAC [that] was sent to Candidate Eight."

37. The Proxy Statement fails to disclose the nature of the discussions regarding "certain of BiomX's investors['] . . . willingness to roll their equity forward or to increase their investments in a possible business combination."

38. The Proxy Statement fails to disclose the nature of the "[f]eedback from [] meetings with certain stockholders of CHAC and BiomX [that] resulted in refinement of certain terms regarding the participation of current shareholders and the minimum cash condition," as well as the nature of the "refinement of [the] certain terms."

39. The Proxy Statement fails to disclose the timing and nature of all communications regarding the future employment and directorship of Chardan's officers and directors, including who participated in all such communications.

40. With respect to BiomX's financial projections, the Proxy Statement fails to disclose, for each set of projections: (i) all line items used to calculate (a) total revenues, (b) gross profit, (c) operating income, and (d) unlevered free cash flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

41. The Proxy Statement fails to disclose financial projections for Chardan.

42. The Proxy Statement fails to disclose who prepared the "CHAC Financial Analysis."

43. With respect to the Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow; (ii) the individual inputs and assumptions underlying the discount rates of 13.4% to 15.4%; (iii) the risk-adjusted sales estimates for BiomX's products in acne-prone skin, IBD, PSC, and colorectal cancer used in the analysis; and (iv) the pro forma fully diluted BiomX shares.

44. The Proxy Statement fails to disclose Elliot Gnedy's reasons for resigning from the Board on September 9, 2019, including why "he could no longer be considered independent under NYSE American Stock Exchange's listing standards."

45. The omission of the above-referenced material information renders the Proxy Statement false and misleading.

46. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Chardan's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Chardan

47. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

48. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Chardan is liable as the issuer of these statements.

49. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within Chardan, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

50. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

51. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate

disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

52.     The Proxy Statement is an essential link in causing plaintiff to approve the Proposed Transaction.

53.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

54.     Because of the false and misleading statements in the Proxy Statement, plaintiff is threatened with irreparable harm.

### COUNT II

#### Claim for Violation of Section 20(a) of the 1934 Act
#### Against the Individual Defendants

55.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

56.     The Individual Defendants acted as controlling persons of Chardan within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Babcock and participation in and/or awareness of Chardan's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Chardan, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

57.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

58. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Chardan, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

59. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

60. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: September 25, 2019

**RIGRODSKY & LONG, P.A.**

By: /s/ *Gina M. Serra*
Seth D. Rigrodsky (#3147)
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: sdr@rl-legal.com
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com